### In re JAFFE.

(District Court, S. D. New York. January 22, 1926.)

**1. Bankruptcy ⊂⇒384.**

Agreement by overwhelming majority of bankrupt's creditors to accept offer of composition will not be overridden, unless bankrupt has clearly violated Bankruptcy Act (Comp. St. § 9585 et seq.).

**2. Bankruptcy ⊂⇒384.**

Evidence *held* insufficient to show collusion or deliberate concealment of assets by bankrupt, and it did not sustain referee's refusal to confirm composition agreement.

**3. Bankruptcy ⊂⇒384—Detriment to bankrupt's creditors by refusing approval of composition will be considered, with other facts.**

That heavy expenses are continuing would not justify overruling objections to confirmation of composition, but detriment to creditors, by refusing approval thereof, will be considered, with other facts.

In Bankruptcy. In the matter of Isidor Jaffe, bankrupt. On report of special master, adverse to confirmation of composition agreement. Composition confirmed.

Remington & Meek, of New York City, for objecting creditors.

H. & J. J. Lesser, of New York City, for bankrupt.

Marcus Helfand, of New York City, for certain creditors.

WINSLOW, District Judge. [1] I am loath to disagree with the findings of the learned special master in this case; but, after mature consideration of the record herein, I am impelled to come to a different conclusion. I cannot find that there is collusion or deliberate concealment of assets. Where the overwhelming majority of the creditors have agreed as to the wisdom of accepting the offer of composition, that approval will not be overridden, unless it is quite manifest that the bankrupt has been guilty of acts which transgress the intent and spirit of the provisions of the Bankruptcy Act (Comp. St. § 9585 et seq.).

[2] The absence of the general ledger is made the basis of one of the specifications of objection. This book was not a book of original entry. Witnesses have testified that other books of original entry in evidence, from which the general ledger was made up, give practically the same information which the general ledger presumably would have furnished. It is true that there is considerable speculation as to what might have appeared in the general ledger as to prior capital account. Yet, on the other hand, it is assumed that the books that were produced were sufficient to disclose the bankrupt's financial condition, on which condition is based the hypothesis that the financial statement theretofore issued was false in fact. I cannot conclude that this ledger has been destroyed or concealed with intent to conceal the bankrupt's financial condition.

In regard to the concealment of assets, the computation is predicated upon purchases and sales, and the appraisal of merchandise on hand at replacement value. Depreciation in market conditions might well account for a difference between appraisal value and the cost price. It is quite apparent that the bankrupt was grossly lacking in business efficiency, although attempting to conduct six or more stores in various parts of the country. But lack of business ability of itself is not sufficient to sustain the particular specification to which allusion is made. It is sometimes said that mathematical computations can apparently prove almost anything; but conclusions, based largely upon the opinions and deductions of expert accountants, are highly speculative and of doubtful value, in the absence of evidence of probative force.

The financial statement, to which exception is made, would indicate a discrepancy of less than $300 in accounts payable. I do not think that in this case it can be said that this apparent discrepancy indicates, when the entire matter is taken into account, the intentional issuance of a materially false statement. It is hardly reasonable to assume that the objecting creditors were induced to give the bankrupt further credit, relying upon this alleged false statement. The statement was delivered on June 1, 1925. One of the objecting creditors, after its issuance, furnished merchandise of less than $400, and received on account more than 50 per cent. of moneys due to him. The other objecting creditor apparently did not give further credit by reason of this statement, but such credit as was extended would appear to have been extended on facts and circumstances independent of the statement itself. (See letter of Beers.)

[3] This estate has been sadly depleted since the offer of composition was made, and the heavy burden of expense is continuing. This, of itself, of course, would not justify the overruling of the specifications; but the detriment to the creditors by refusing the approval of composition is certainly an element which, when considered with the other facts and circumstances of the case, I think justifies the court's conclusion to disagree with the finding of the learned referee, and direct that the composition be confirmed.