45 F.2d 489 (1930)
IN RE NEIDERHEISER.
STANLEY'S INCORPORATED STORE NO. 3
v.
NEIDERHEISER.
No. 8897.
Circuit Court of Appeals, Eighth Circuit.
November 29, 1930.
M. E. Culhane, of Minneapolis, Minn., for appellant.
Emanuel Sgutt, of Fargo, N. D., for appellee.
*490 Before KENYON, BOOTH, and GARDNER, Circuit Judges.
KENYON, Circuit Judge.
Appellee, with H. R. Earl, who is appellee in case No. 8910, 45 F.(2d) 492, purchased a shoe business at Sioux Falls, S. D., from appellant. It was conducted as a corporation, and became bankrupt in 1926. Appellee filed his petition in bankruptcy April 21, 1927, and was adjudged a bankrupt April 23, 1927. He filed petition for discharge June 16, 1927. Appellant, as a creditor, filed on September 16, 1927, specifications setting forth reasons why the discharge should not be granted. The court referred the application for discharge and the specifications to the referee in bankruptcy for examination, testimony, and report on the issues raised by the application and the specifications of objections. On the 14th of December, 1929, the referee filed his report making certain findings of fact and the general conclusion of law that the specifications had not been sustained, and therefore the bankrupt was entitled to his discharge. On January 20, 1930, the District Court made an order of discharge, which refers to the report of the referee, the argument before the court, and states, "after due consideration," the report of the referee is in all respects confirmed. From the formal order granting discharge, this appeal is taken.
The report of the referee as to the facts and his conclusion of law is advisory merely, and it is the duty of the court to exercise an independent judgment on the question of discharge. International Harvester Co. of America v. Carlson (C. C. A.) 217 F. 736; In re Hughes (C. C. A.) 262 F. 500. This course was followed in this case. So the question before us is as to the action of the District Court in granting discharge. On the merits of the case, was this action right?
If any one of the objections to the discharge should have been sustained, then the discharge should not have been granted. Erickson v. Bicknell (C. C. A.) 28 F.(2d) 729.
The first specification in opposition to the discharge entitled to consideration is No. 2, which alleges that, with intent to conceal his financial condition, bankrupt destroyed, concealed, or failed to keep books of accounts or records from which his financial condition might be ascertained.
The bankruptcy statute, title 11, § 32(b), USCA, provides that an applicant is entitled to discharge unless he has done certain things, among which is: "(2) Destroyed, mutilated, falsified, concealed, or failed to keep books of account, or records, from which his financial condition and business transactions might be ascertained; unless the court deem such failure or acts to have been justified, under all the circumstances of the case."
The referee said on this subject: "Specification Number (2) is not sustained, as there is no showing whatsoever that the Bankrupt destroyed, concealed, or failed to keep books of account or records which he should have kept, and under the circumstances of this case there seems to be no occasion for his keeping a set of books."
If the occupation or business of the bankrupt were such that ordinarily no books of account would be kept, or if the court under all the circumstances deems the failure to keep such books justified, then the failure so to do would not be sufficient to bar discharge. If the bankrupt were engaged in no business and was a mere employee not in the habit of keeping books or records of account, surely the failure so to do would be no bar to discharge. Such appears to be the situation here. Appellant was a traveling man on a small salary, who had not been accustomed to keeping books, had no particular need for so doing, and testified he never did keep books. Under these circumstances we think subdivision 2 above set out would not be applicable. Bankrupt testified he did not have his checks or records of deposit; that he had returned his bank book to the bank. His testimony on this subject is rather unsatisfactory, but we think the evidence is not sufficient to show that he was under any compulsion to keep any books or that he intentionally destroyed or concealed any books or records from which his financial condition might be ascertained.
Specifications 3 and 4 relate to the same transaction, but approach it in different ways. It will be sufficient to quote specification No. 3: "That the above named Bankrupt knowingly and fraudulently concealed at the time of the filing of his Petition in Bankruptcy herein, and ever since, and from the Trustees of said estate the following described real property belonging to the estate of said Bankrupt and at said time and now of the value of over $500, the particulars in regard to which are as follows: That the said Bankrupt on or about March 10, 1924, by Warranty Deed conveyed to Maybelle T. Neiderheiser, his wife, the Southwest Quarter of Section 34, Township 5, North of *491 Range 29, E. B. H. M., Stanley County, South Dakota, free of encumbrance. That said real property was conveyed, as above set forth, in Trust for said Bankrupt, and such Trust existed at all of the times hereinbefore set forth and still exists."
The point urged is that, while this was not a fraudulent transaction in the ordinary sense, the bankrupt either had a resulting trust in the real estate or his wife held the same in secret trust for him. Subdivision (4) of section 32 (b), title 11, USCA, provides that discharge shall not be granted the applicant if "at any time subsequent to the first day of the twelve months immediately preceding the filing of the petition, transferred, removed, destroyed, or concealed or permitted to be removed, destroyed, or concealed any of his property, with intent to hinder, delay, or defraud his creditors." It is without question that the transfer was prior to the twelve months immediately preceding the filing of the petition, so that as a mere fraudulent offense this would not be sufficient to bring the situation under the bar of the statute. But appellant claims that the property was held in trust for the bankrupt, and hence the section quoted is not applicable. To this, therefore, we refer. As to these specifications, the referee in his report said: "In regard to Specifications (3) and (4) there is nothing in the testimony which would justify a Finding of Fact that the Bankrupt has concealed any property, or that the real estate conveyed to his wife was transferred with intent to defraud creditors and is now held in trust for him. The uncontradicted positive testimony of both the Bankrupt and his wife is to the effect that this was an absolute transfer made without any reservations of title whatsoever."
The bankrupt and his wife both testified that she had loaned him $500; that the bankrupt since their marriage had turned over to her all of his earnings; that she saved what she could out of them, after paying household expenses, and from these savings and what she had saved prior to her marriage, which she testified was between $700 and $800, she loaned him $500, and a month or so thereafter he gave her the deed to the land. Some of her husband's earnings she deposited in the bank and some she kept as her own in a tin box at home. The testimony as to this loan is somewhat shaky, but we cannot say it is not true, especially in view of the fact that these witnesses were before the referee and he seems to have believed them, and the court likewise seems to have believed their story. There is no satisfactory evidence as to the value of the land. There seems to have been no concealment in the transaction. The deed was recorded March 15, 1924. Both husband and wife testify the transaction was bona fide and made long before bankruptcy and for a valid consideration. While the peculiar circumstances of this loan arouse some suspicion, we cannot determine the case upon suspicion. The burden was on appellant to show that in fact title was held in trust by the wife for the husband. The evidence is not sufficient so to show.
Another specification relied on is No. 5, which is as follows: "That the above named Bankrupt knowingly and fraudulently concealed at the time of the filing of his Petition in Bankruptcy herein, and ever since, and from the Trustee of said estate, the following described personal property belonging to the estate of said Bankrupt at said time and of the value of $125 or more, the particulars in regard to which are as follows: That said Bankrupt knowingly and fraudulently failed to set forth in his Schedules of assets that Hamilton Brown Shoe Co., a corporation, of St. Louis, Missouri, was at said time indebted to him in the above mentioned sum, salary already earned at said time."
It seems that the bankrupt was employed by the Hamilton Brown Shoe Company under an arrangement by which he received traveling expenses and 3 per cent. commission on sales. It is not entirely clear from the evidence whether he received at least $200 a month outside of traveling expenses, but the record would indicate that he did, and that he would have the $200 per month even if his commissions did not amount to that sum. He asserts that nothing was due him from his employer at the time of filing the petition in bankruptcy. Appellant claims that he concealed some $125 owing to him by said employer. It is true that the employer paid the bankrupt $200 salary for the month of April, 1927, and continued to pay at that rate for a number of months thereafter. While the bankrupt was on the stand he produced a telegram from his employer which was introduced without objection, and is as follows: "Dated February 6, 1929, 5 P. M., St. Louis, Missouri. W. W. Neiderheiser, c/o Waldorf Hotel, Fargo, North Dakota, 4  21  27 you owed $616.79. Signed Hamilton-Brown Shoe Company." This was the date of filing petition in bankruptcy and this evidence is uncontradicted, and shows rather conclusively that he owed his employer instead of the employer owing him. This statement *492 of his employer seems to have been relied on by bankrupt in filing his schedules. This specification is not established.
The last specification relied on to prevent discharge is No. 6, which is as follows: "That the above Bankrupt knowingly and fraudulently concealed at the time of the filing of his Petition in Bankruptcy herein, and ever since, and from the Trustee of said estate, the following described personal property belonging to the estate of said Bankrupt at said time and of the value of more than $100, the particulars in regard to which are as follows: That said Bankrupt knowingly and fraudulently failed to set forth in his Schedules herein the above mentioned sum that previous to filing his Petition in Bankruptcy herein he had delivered to Maybelle T. Neiderheiser, his wife, to hold in Trust for him."
Appellant claims that during the period from September 7, when bankrupt's wife opened a deposit account with the Merchants' National Bank at Fargo, and the 23d day of April, 1927, the date of adjudication in bankruptcy, there was deposited from the husband's salary by his wife about $1,700, and that of this sum $562 was drawn out within a period of seven weeks before the petition in bankruptcy was filed; that, when the bankrupt filed his schedules in bankruptcy on April 21, 1927, there was in this account $70.98, and on the date of the adjudication in bankruptcy there was on deposit in this account the sum of $60.98, and that on the date that he filed his petition $125 was drawn out of this account. It is of course the bankrupt's duty to schedule his assets, no matter how small they may be, but it appears that he turned over his earnings to his wife, she to pay living expenses and household bills, and that what was left was to be hers. The fact that she drew $125 for necessary family expenses on the day the petition in bankruptcy was filed would not be sufficient to show any fraud or concealment. Nor would it be sufficient ground on which to deny a discharge in bankruptcy. In re William Tirschler & Co. (D. C.) 18 F.(2d) 365. We think the charge of concealment of money held by the wife has not been substantiated. While a number of circumstances here disclosed are suspicious and while courts ought to be very careful to see that a bankrupt does not by short turns and ingenious devices arrange with his relatives to defraud his creditors, we are not convinced that the evidence on this subject is sufficient for us to say that it necessarily appears that bankrupt had been guilty of concealment or that he did any fraudulent act sufficient to bar a discharge. Fraud, of course, is not to be presumed. Discharge in bankruptcy is a legal right to be granted by the court, unless it appear that the bankrupt has done some of the things which under the statute (title 11, USCA § 32) are a bar to a discharge.
The decree is affirmed.